IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff-Respondent,

 vs.                                                               CIVIL NO. 01-224 JC/LFG
                                                                   CRIM. NO. 99-964 JC

HECTOR RUIZ-AGUIRRE, aka
ARMANDO ORDOÑEZ-GONZALEZ,

        Defendant-Movant.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

1. This is a proceeding on a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed February 23, 2001. Movant Hector Ruiz-Aguirre, aka Armando Ordoñez-Gonzalez ("Ruiz-Aguirre"), attacks the judgment and sentence entered by the United States District Court for the District of New Mexico in United States v. Ordoñez-Gonzalez, No. CR 99-964, in which he was convicted on a guilty plea of conspiracy to possess with intent to distribute less than 50 pounds of marijuana.

### Background

2. Ruiz-Aguirre was arrested in Odessa, Texas, on January 29, 1998, for possession of

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommenda-tions. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

approximately 30 pounds of marijuana. Texas state authorities declined to prosecute. About a month later, on February 24, 1998, Ruiz-Aguirre was arrested by the United States Customs Service in Las Cruces, New Mexico, where he was found, again, with approximately 30 pounds of marijuana in his car. This time, he was convicted in New Mexico state court and received an 18 month suspended sentence on May 19, 1998.

3. While Ruiz-Aguirre was in custody in connection with the New Mexico charges, Border Patrol agents determined that he was in the United States illegally. He was arrested by federal agents upon his release from state custody on May 20, 1998, and was later charged in United States v. Ruiz-Aguirre, CR 98-591, with illegal entry following deportation in violation of 8 U.S.C. § 1326. He pled guilty to this charge and was sentenced to 37 months' incarceration. The plea agreement in the deportation case was executed on September 2, 1998. In it, the Government agreed that it would not bring additional charges against Ruiz-Aguirre "arising out of the defendant's conduct now known to the United States Attorney's Office for the District of New Mexico." [Plea Agreement, Doc. 13 in CR 98-591, at 5].

4. The conspiracy charge at issue herein was brought in an indictment filed in CR 99-964 on August 19, 1999.[2]   Ruiz-Aguirre pled guilty to the conspiracy charge and was sentenced on December 11, 2000 to 24 months' imprisonment, to run consecutively with the sentence in the deportation matter. He did not appeal. His principal argument in this petition is that the United States Attorney's Office was aware of the Texas and New Mexico marijuana arrests at the time it entered into the plea agreement in the deportation case in September 1998 and that, in bringing the

---

[2]A superseding indictment was filed on September 22, 1999, and a later criminal information was filed on August 7, 2000.

conspiracy charge in CR 99-964, the Government breached its promise not to prosecute for any conduct then known to the U.S. Attorney's office. The Government contends that it was not aware of facts which would give rise to a drug conspiracy charge against Ruiz-Aguirre until some time after the earlier plea agreement had been concluded, and that the basis for a drug conspiracy prosecution against Ruiz-Aguirre and others was not established until the spring of 1999. Ruiz-Aguirre raises other arguments as well, as noted below.

## Discussion

5. The Government argues, as a preliminary matter, that Ruiz-Aguirre's petition should be barred for his failure to raise these arguments on direct appeal. In the plea agreement in the conspiracy case, Ruiz-Aguirre waived his right to appeal. [Doc. 176 in CR 99-964, at 5]. He also waived his right to appeal in the deportation matter. [Doc. 13 in 98-591, at 5]. He did not file an appeal in either case. Generally, failure to raise an issue on direct appeal precludes the petitioner from later raising the issue in a § 2255 motion. An exception to this rule applies when the petitioner can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains, or that a fundamental miscarriage of justice will occur if his claim is not addressed. United States v. Warner, 23 F.3d 287, 291 (10th Cir. 1994).

6. One reason given by Ruiz-Aguirre for his failure to file an appeal is that he was not aware that he had a right to appeal "under the present deal that I had made with the court" (apparently referring to the waiver of appeal contained in his plea agreement). However, the fact that a plea agreement precludes a defendant from appealing his sentence does not constitute "cause" which will justify a later § 2255 motion. United States v. Pipitone, 67 F.3d 34, 39 (2d Cir. 1995), and cases cited therein.

3

7. Ruiz-Aguirre also says that his attorney never informed him that he could appeal, and the Government addressed this implicit issue of ineffective assistance of counsel in its Response. However, Ruiz-Aguirre made clear in his Reply that he is not asserting ineffective assistance of counsel, stating "<u>Petitioner has no reason for raising such a frivolous issue</u>. Petitioner was pleased with his counsel's performance, and this motion pursuant to section 2255 seeks no relief as to violations to the right to counsel" (emphasis in original). [Doc. 6, at unnumbered p. 9].

8. Ruiz-Aguirre has therefore made no showing of cause for his failure to appeal. In addition, there is no question of a fundamental miscarriage of justice, as he does not assert actual innocence. <u>Phillips v. Ferguson</u>, 182 F.3d 769, 774 (10th Cir. 1999). Ruiz-Aguirre has procedurally defaulted his claims, and the Court will not consider his contention of prejudice arising from a seven-month delay between the time of indictment and the time of arrest, and his claim that the sentencing guidelines were misapplied.

9. However, because Ruiz-Aguirre's primary claim, that the Government breached a promise not to bring charges against him based on already-known conduct, raises implications regarding the voluntariness of his pleas, the Court will address the merits of this claim in spite of the procedural default.

10. Ruiz-Aguirre raised the identical claim in the course of criminal proceedings on the conspiracy charges. On April 19, 2000, he filed a Motion to Enforce Agreement Requiring Dismissal of Indictment Against Defendant [Doc. 132 in CR 99-964], arguing that the conspiracy case must be dismissed because the Government violated the earlier plea agreement, in that the U.S. Attorney's office was aware in September 1998 of his marijuana arrests earlier that year in Texas and New Mexico, and it was that conduct on which the conspiracy charge was based. In connection with this

4

motion to enforce the plea agreement, the District Judge conducted an evidentiary hearing in Las Cruces on May 4, 2000. The "critical factor" at this hearing, as stated by the District Judge, was whether "the Government knew about the conspiracy at the time your client pled to the illegal reentry" on September 2, 1998. [Transcript of Motion Hearing, May 4, 2000, at 14; hereafter cited as "TMH"].

11. At the hearing, the Government presented testimony of two agents. Dennis Kintigh, Special Agent with the Federal Bureau of Investigation, testified that he began an investigation in the summer of 1998 which eventually led to the conspiracy charges at issue herein. At that time, he said, the investigation centered on an individual named Salvador Navarro. A search warrant was executed on Navarro's residence in October 1998, and it was not until that month, he testified, that he began a full-blown investigation into drug activity involving Navarro and his associates. Kintigh said that it was not until late October or early November 1998 that he first heard of Josie Saenz, the lead defendant in the conspiracy case and the woman in whose company Ruiz-Aguirre had been arrested earlier that year. He became aware for the first time of Ruiz-Aguirre's involvement in the Saenz-Navarro activity in March 1999, through information provided by a Customs Service informant. Kintigh stated that this informant also told him, in March 1999, of other drug transportation activity by Ruiz-Aguirre apart from the conduct which caused the January/February 1998 arrests. [TMH, at 9-12, 14-15].

12. The other Government witness at the May 4 hearing was Kurt Nelson, an agent with the Drug Enforcement Administration. He stated that he began the DEA investigation into the drug conspiracy at issue herein in February 1999. He first heard of Ruiz-Aguirre, he said, in connection with other co-conspirators in this matter, when he received a U.S. Customs Service report dated

5

March 24, 1999. The report stated that Ruiz-Aguirre had been twice arrested in early 1998, both times in the company of Josie Saenz, a person who was, by March 1999, a target of the conspiracy investigation. The report also noted that Ruiz-Aguirre was involved in other incidents of drug transporting, aside from the Texas and New Mexico incidents for which he was arrested in January/February 1998. [TMH, at 20-24].

      13. Ruiz-Aguirre did not present any evidence at the hearing. His attorney argued that the United States Attorney's office was aware, prior to the plea agreement in September 1998, that Ruiz-Aguirre had been arrested in Texas and New Mexico in early 1998 in the possession of marijuana and in the company of Josie Saenz, and thus that they knew of the facts underlying the conspiracy charge prior to making the promise contained in the plea agreement. However, Ruiz-Aguirre presented no evidence that the United States Attorney's office knew facts that would form the basis for a charge of conspiracy against Ruiz-Aguirre. Indeed, the agents testified that they were not even aware of Josie Saenz's involvement in the conspiracy under investigation until late October or early November 1998, well after the plea agreement was negotiated and signed, and they further testified that there was no evidence that Ruiz-Aguirre was connected with the conspiracy until March 1999.

      14. The Government argued at the hearing that, although the U.S. Attorney's office may have known that Ruiz-Aguirre was arrested twice for marijuana possession, it was not until well after the plea agreement was concluded in the deportation case that they became aware that he was part of the larger drug conspiracy. The Government, they argued, cannot be held to a purported promise not to prosecute Ruiz-Aguirre for a conspiracy when they were not aware of his involvement in any conspiracy at the time the promise was made.

15. The District Judge presiding at the motion hearing agreed with the Government and denied the motion to enforce the plea agreement, finding no evidence to support the claim that the Government was aware of Ruiz-Aguirre's involvement in the conspiracy. In the order denying the motion, the Court held that "Defendant may renew the motion should further investigation reveal any factual basis for doing so." [Doc.143 in CR 99-964]. The motion was not renewed.

16. Ruiz-Aguirre had ample opportunity in the criminal proceedings giving rise to this § 2255 motion to prove that the Government knew of his drug conspiracy activity prior to September 2, 1998. He did not make such a showing, relying instead on what amounts to speculation that the Government must have known, because it had records of his two arrests for marijuana possession earlier that year. His § 2255 petition similarly relies on speculation. The fact that Ruiz-Aguirre was arrested with 30 pounds of marijuana in his possession may have laid a factual basis for a substantive drug possession or distribution charge, but it does not establish that Ruiz-Aguirre was part of a larger conspiracy. The only evidence on the record regarding the Government's knowledge of the latter is that their investigation did not connect Ruiz-Aguirre with the conspiracy until several months later.

17. A substantive crime, and a conspiracy to commit that crime, are not the "same offense" for double jeopardy purposes, United States v. Felix, 503 U.S. 378, 112 S. Ct. 1377 (1992), and a promise not to prosecute a defendant for the crime of possession of marijuana does not constitute a promise not to prosecute for a conspiracy to possess with intent to distribute. Where there is no indication that the Government was in possession of evidence sufficient to link the defendant to the crimes charged in a current indictment, the Government is not required to charge him with those acts at the time of the plea, United States v. Romero, 786 F. Supp. 1173, 1178 (S.D.N.Y. 1992), *aff'd*, 967 F.2d 63 (2d Cir. 1992), and the same reasoning applies to a promise not to prosecute at a later

date. Even a prosecutor's statement to defense counsel that the plea agreement "cleans up everything I now have" will not estop the Government from later charging crimes by the defendant which come to light only after the plea agreement is signed. Id.      18. In interpreting a plea agreement, the words "conduct known to the government" cannot fairly be construed as "conduct that reasonably could have been known," United States v. Barraza, 87 F.3d 1323 (Table, text in Westlaw), No. 95-50450, 1996 WL 338357, at * 3 (9th Cir. Jun. 18, 1996), and general information about criminal behavior by a defendant is not the same thing as the requisite "reasonably detailed knowledge of ... [defendant's] involvement in the subsequently charged ... offense." United States v. Strawser, 739 F.2d 1226, 1231 (7th Cir. 1984).

19. If a plea agreement is based in part on promises made as an inducement, the promises must be fulfilled. Santobello v. New York, 404 U.S. 257, 262-63, 92 S. Ct. 495, 498-99 (1971). However, in this case, the Government did not promise Ruiz-Aguirre in the first plea agreement that he would be immunized from prosecution for any and all criminal activity which later came to light. As the Government points out, there was other consideration for the plea agreement, and Ruiz-Aguirre received substantial benefit therefrom. He has not demonstrated, either in the criminal proceedings or on this § 2255 petition, that the United States Attorney's office knew that he was part of a drug conspiracy far larger than appeared from his two marijuana arrests. The Court finds that the Government did not, therefore, breach any promise contained in the earlier plea agreement, and the Court rejects Ruiz-Aguirre's request for specific performance of such a promise in the form of dismissal of the indictment.

**Recommended Disposition**

That Ruiz-Aguirre's motion under § 2255 be denied and that the case be dismissed with prejudice.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge